RANELLS, ADMX., ET AL., APPELLEES, *v.* CITY OF CLEVELAND, APPELLANT.

(No. 73-951—Decided January 8, 1975.)

4

*Messrs. Komito, Nurenberg, Plevin, Jacobsen, Heller & McCarthy* and *Mr. Marshall I. Nurenberg,* for appellees.

*Mr. Herbert R. Whiting,* director of law, and *Mr. Thomas A. Smith,* for appellant.

PAUL W. BROWN, J. We are asked to decide whether the city of Cleveland, having admitted negligence in the operation of its Water Department, can be held liable in punitive damages for alleged wanton misconduct.

Ohio law is well established that a municipal corporation, while acting in a governmental capacity, is immune from liability for tortious conduct. It is equally clear that when acting in a proprietary capacity, a municipal corporation may generally be held liable for tortious conduct in the same manner as would a private corporation or individual.[1] Neither of those basic principles, embodied in this court's application of the doctrine of sovereign immunity, is affected by our disposition of the present case.

Nor is it necessary to disturb the jury's awards by way of compensation for wrongful death, conscious pain and suffering, and other necessary and associated expenses. A unanimous Court of Appeals determined those awards to be more than adequately supported by the evidence, and we find nothing which persuades us to disagree.

However, the appellees' allegations of wanton misconduct, and the jury's awards of punitive damages based thereon, present problems of a more serious nature, for if punitive damages are to be awarded, they must further the public policy which justifies them. The petition herein clearly asserts acts of negligence in the handling of a hazardous gas, with some foreknowledge that serious conse-

---

[1] It is clear that the city of Cleveland, in the operation of its Water Department, acts in a proprietary capacity. *Hall* v. *Youngstown* (1968), 15 Ohio St. 2d 160; *Barberton* v. *Miksch* (1934), 128 Ohio St. 169.

quences might ensue. Allegations of such a character are sufficient to form the basis for a finding of wanton misconduct. *Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320, a case upon which both parties rely.

Assuming, *arguendo*, that wanton misconduct, as defined in *Kellerman*, forms a sufficient basis for an award of punitive damages,[2] we must determine whether the public

---

[2]In *Kellerman*, it appears that wanton misconduct was alleged, not to obtain punitive damages but rather to avoid the defense of contributory negligence. The *Kellerman* definition of wanton misconduct implied "a disposition to perversity and a failure to exercise any care toward those to whom a duty of care was owing when the probability that harm would result from such failure was great and such probability was actually known, or in the circumstances ought to have been known, to the defendant." Other Ohio cases, alleging wanton misconduct to avoid the draconian effect of Ohio's automobile guest statute, define the concept in similar terms. *Botto* v. *Fischesser* (1963), 174 Ohio St. 322; *Helleren* v. *Dixon* (1949), 152 Ohio St. 40. But the policy considerations involved in a case in which punitive damages are sought seem different from those found in a contributory negligence or guest statute situation.

Traditionally, punitive damages have been allowed only in cases involving specific statutory provisions or intentional acts of wrongdoing. Such recoveries have become commonplace in actions involving assault and battery, wrongful arrest, false imprisonment, alienation of affection or criminal conversation, libel or slander, invasion of privacy, conversion, and other wrongs of a similar nature. 16 Ohio Jurisprudence 2d 179, Section 156. However, our research fails to disclose a case in which this court has awarded punitive damages for alleged wanton misconduct, and only one case in which an Ohio Court of Appeals has done so.

In *Gearhart* v. *Angeloff* (1969), 17 Ohio App. 2d 143, the proprietor of a bar negligently fired a revolver in the direction of two men scuffling on the floor, in an effort to break up a disturbance. The bullet missed the intended victim, but grazed the arm of Gearhart, an innocent bystander. In upholding an award of both compensatory and punitive damages, the Court of Appeals for Summit County noted that intentional wrongdoing, or other outrageous conduct, would support an award of punitive damages. The court quoted *Smithhisler* v. *Dutter* (1952), 157 Ohio St. 454, 461, and *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, 437, to the effect that such damages would be allowed where " 'wrongdoing has been intentional and deliberate, or has the character of outrage frequently associated with crime.' " Inferentially, application of the doctrine of transferred intent to the facts in *Gearhart* would yield the finding of a common law battery, a criminal offense under modern-day statutes.

policy upon which such awards are based continues in force when the action is one against a municipal corporation.

No prior decisions of this court are controlling on this point. Appellees cite *Dayton* v. *Pease* (1854), 4 Ohio St. 80; *Hack* v. *Salem* (1963), 174 Ohio St. 383; and *Moloney* v. *Columbus* (1965), 2 Ohio St. 2d 213, to support the proposition that a municipal corporation, when acting in a proprietary capacity, assumes liability in a manner identical to a private corporation. In none of the cited cases were punitive damages either sought or awarded. Thus the present case, specifically involving the issue of punitive damages, is one of first impression.

This issue has often been resolved by the courts of other states. A substantial majority of jurisdictions treating the issue have held that in the absence of statutory authority specifically providing for an award of punitive damages, an injured plaintiff has no right to recover exemplary or punitive damages against a municipal corporation. See, generally, 57 American Jurisprudence 2d 268, Section 318, and annotation, 19 A. L. R. 2d 903, 905-911. In so holding, the courts have adopted a variety of rationales, the totality of which we find compelling.

For example, in *Fisher* v. *Miami* (Fla. App. 1954), 160 So. 2d 57, 59 affirmed, 172 So. 2d 455, the Third District Court of Appeals declared that:

"* * * to permit such [punitive] damages against a public corporation is to contravene public policy since the parties who must bear the burden of the punishment are the taxpayers and citizens who constitute the very persons who as a group are to benefit from the public example which the granting of such damages is supposed to make of a wrongdoer."

In *Chappell* v. *Springfield* (1968), 423 S.W.2d 810, 814, the Supreme Court of Missouri declared that:

"The theory that punitive damages serve as a deterrent to others adds little justification for the award against a municipality. It is assumed that public officials will do their duty, and if discipline of a wrongdoing municipal employee is indicated, appropriate measures are available

through the electorate, or by superior officials responsible to the electorate, without recourse to punitive awards through the courts.''

In *Costich* v. *Rochester* (1902), 68 A.D. 623, 631, 73 N. Y. Supp. 835, the Appellate Division of the Supreme Court of New York laid to rest the contention that no distinction should exist between private and municipal corporations. Said the court, at page 631: Private corporations ''are largely created and administered for purposes of profit or for some other personal object. Those who become members of them do so voluntarily, and in the majority of instances in the hope of gain. There are manifold and speedy ways by which to reach and replace any representative or agent who so mistakes or disregards his duty as to render liable in punitive damages the persons and interests represented by him. The municipal corporation is different. It is not organized for any purpose of gain or profit, but it is a legal creation, engaged in carrying on government and administering its details for the general good and as a matter of public necessity. The individuals who in the aggregate constitute it and submit certain of their affairs to its control and management are not always volunteers in so doing. If they happen to live within the limits of its jurisdiction, they become members of it to the extent of being represented by its agents, and having their property liable for its acts. While theoretically they have a voice in selecting the agents who shall represent and control the municipality, we know that practically it often happens that the government is not of their choice, and its management not in accordance with their judgment.''

To assess punitive damages upon entities so different in character, without distinction, defies the logic upon which the framework of a legal system must be based.

It must be continually emphasized that punitive damages are assessed over and above that amount adequate to compensate an injured party. As such, they are nothing less than a windfall to any plaintiff who receives them. When their reason for being—to punish or deter—ceases to exist, the entire rationale supporting them collap-

ses. Appellees' contention that any punitive damage award in the present case will come from the Water Department rather than general revenue funds is literally a distinction without a difference. It matters not whether the burden of meeting a punitive damage obligation falls upon a taxpayer, as a taxpayer, or as a user and consumer of the public water supply.

That the punitive damages awards herein were inappropriate was further dramatized by the admission of evidence as to the wealth of the Water Department of the city of Cleveland. Generally, such evidence is necessary in a punitive damages context, so as to allow the jury to determine that amount of damages sufficient to punish the defendant for its wrongdoing. When the defendant is a municipal corporation, however, admitting such evidence raises the spector of astronomical judgments—because the financial resources of a municipal corporation are, essentially, unlimited. If a city's general revenue fund is involved, taxes can be increased. If a water or other public utility department is involved, assessments can be raised. Yet to eliminate evidence of wealth destroys the punishment rationale by which punitive damages are justified. In neither situation is a satisfactory result achieved.

The rationale supporting the imposition of punitive damages, in the absence of statute, is nebulous at best. When applied to a municipal corporation, or an instrumentality thereof, the rationale dissolves. We affirm the judgment of the Court of Appeals, insofar as it affirmed the judgment of the Court of Common Pleas, awarding the administratrix of the estate of Richard Ranells $185,000 for wrongful death, $6,378.95 for funeral, hospital and other expenses, and $50,000 for conscious pain and suffering, but reverse the judgment awarding $375,000 in punitive damages. We also affirm the judgment of the Court of Appeals, insofar as it affirmed the judgment of the Court of Common Pleas, awarding the administrator of the estate of Sandra Ranells $235,000 for wrongful death, $7,653.55 for funeral, hospital and other expenses, and $125,000 for

conscious pain and suffering, but reverse the award of $375,000 in punitive damages.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN and STERN, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. Plaintiffs alleged that defendant's acts "constituted a complete and utter disregard for human life and safety." My review of the record bears out this allegation, and clearly discloses, on the part of the defendant, a continuing hardheartedness toward the residents of the neighborhood surrounding the Baldwin Filtration Plant. Time and again city officials were put on notice that a catastrophe was imminent, but those warnings were ignored to the peril of the citizens of Cleveland.

In my opinion, a better case could not be made for an award of punitive damages. However, a majority of this court seizes this opportunity to formulate a new type of municipal tort immunity.

In *Atlantic & Great Western Ry. Co.* v. *Dunn* (1869), 19 Ohio St. 162, this court upheld an award of punitive damages against a railway company. In the dissenting opinion it was argued, at page 592, that every dollar of punitive damages assessed against the company would be paid by the stockholders of the company or would be assessed against the public who use the company's roads.

Here, over 100 years later, the majority embraces the rationale of the *Dunn* dissent by arguing that "* * * the burden of meeting a punitive damage obligation falls upon a taxpayer, as a taxpayer, or as a user and consumer of the public water supply."

Prior to this case, it was assumed by the bench and bar of this state "* * * [t]hat a municipal corporation, as the proprietor of lands, would be responsible for an in-

jury resulting from the use of its own property to an adjacent proprietor, to the same extent as if it were a natural person. * * *'' *Tiffin* v. *McCormack* (1878), 34 Ohio St. 638, 643.

The state of Ohio is now liable to the same extent as a private party or natural person. R. C. 2743.02(A), in pertinent part, reads:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined * * * in accordance with *the same rules of law applicable to suits between private parties.*" (Emphasis added.)

In enacting R. C. 2743.02(A), the General Assembly had, as a guide, the Federal Tort Claims Act, Section 2671 *et seq.*, Title 28, U. S. Code.

Section 2674, Title 28, U. S. Code, reads:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and *to the same extent as a private individual* under like circumstances, *but shall not be liable for* interest prior to judgment or for punitive damages. * * *'' (Emphasis added.)

By that provision, the federal government is expressly absolved of liability for punitive damages. However, the Ohio General Assembly did not follow that provision.

In my view, in order for the state or a municipal corporation not to be answerable in punitive damages, a statute should expressly so provide.

The judgment herein, requiring a statute expressly authorizing punitive damage awards against a municipality, simply places the cart before the horse.