ARNOLD LAUER, Plaintiff-Appellee, Cross Appellant *v.* YOUNG MEN'S CHRISTIAN ASSOCIATION OF HONOLULU, a Hawaii non-profit corporation dba Armed Services YMCA, ADRIAN ECTON, Defendants-Appellees, Cross Appellees, and CITY AND COUNTY OF HONOLULU, Defendant-Appellant, Cross Appellee

NO. 5739

DECEMBER 8, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE FONG IN PLACE OF KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

In a case sounding in intentional tort, the defendant, City and County of Honolulu (hereinafter City), appeals from a grant of summary judgment in favor of defendant, Young Men's Christian Association of Honolulu, a Hawaii non-profit corporation, d.b.a. Armed Services Y.M.C.A. (hereinafter Y.M.C.A.), and defendant, Adrian Ecton, resident director of Y.M.C.A. (hereinafter Ecton), and further appeals from

the trial court's denial of City's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The plaintiff, Arnold Lauer (hereinafter Lauer or plaintiff), cross-appeals from the judgment of the trial court granting summary judgment in favor of Y.M.C.A. and Ecton.

For reasons stated hereinafter we reverse.

### ISSUES

I. Did the trial court err in holding Y.M.C.A. and Ecton immune from liability by virtue of Section 710-1011 of the Hawaii Penal Code?

II. Did the trial court err in holding the statement made by Ecton to Carol Takafuji qualifiedly privileged as a matter of law?

III. Did the trial court err in limiting plaintiff's attempt to argue the historical value of the Fourth Amendment during his closing argument?

IV. Should the City be held liable for punitive damages?

### STATEMENT OF THE CASE

Lauer filed suit seeking compensatory and punitive damages against the defendants, City, Y.M.C.A. and Ecton, for trespass, invasion of privacy, assault and intentional infliction of emotional distress by the defendants against the plaintiff. The plaintiff also sought damages against Y.M.C.A. and Ecton for defamation of character. The plaintiff also sought damages from the City for violation of his rights under the Fourth Amendment, of the Constitution of the United States, and Article I, Section 5 of the Constitution of the State of Hawaii.

The City filed a cross-claim against the Y.M.C.A. and Ecton. The Y.M.C.A. and Ecton filed a cross-claim against the City.

The case arises out of an incident which took place during the late evening of January 31, 1973, when two officers of the Honolulu Police Department responded to a complaint by

Ecton of fireworks violation at the Y.M.C.A. After arriving they were informed by Danny Keeling (hereinafter Keeling), an employee of the Y.M.C.A., that he saw fireworks thrown from a fifth floor window of the Y.M.C.A. building. He pointed out the window and stated to the officers that it was the window of room 5036. The officers went to room 5036. An officer knocked on the door and identified himself as a police officer investigating a fireworks violation. Plaintiff, though present in his room, did not hear the knocks or calls. When no one responded to his knocks or calls the officer asked Jack Barker (hereinafter Barker), the elevator operator for the Y.M.C.A., to open the door with his passkey. Barker complied but the door opened only a few inches. A chain guard affixed to the door and molding of the door jamb prevented further intrusion. An officer pushed the door open pulling the molding from the wall.

The officers entered the room and asked plaintiff where his fireworks were hidden. The plaintiff contended but the City denied that the officers looked through one of plaintiff's dresser drawers and a paper sack. The officers did not find any fireworks or any other evidence that plaintiff had been playing with fireworks.

On April 7, 1973, Ecton told Carol Takafuji (hereinafter Takafuji), a case worker for the Department of Social Services, State of Hawaii, that plaintiff, a welfare recipient, had thrown firecrackers from the Y.M.C.A. building.

The Y.M.C.A. and Ecton moved for summary judgment on all claims against them. They asserted the immunity of Section 710-1011(3) of the Hawaii Penal Code,[1] entitled "Re-

---

[1] HRS § 710-1011 reads as follows:

§710-1011 *Refusing to aid a peace officer.* (1) A person commits the offense of refusing to aid a peace officer when, upon a reasonable command by a person known to him to be a peace officer, he intentionally refuses or fails to aid such peace officer, in:

    (a) Effectuating or securing an arrest; or

    (b) Preventing the commission by another of any offense.

    (2) Refusing to aid a peace officer is a petty misdemeanor.

    (3) A person who complies with this section by aiding a peace officer shall not be held liable to any person for damages resulting therefrom, provided he acted reasonably under the circumstances known to him at the time.

fusing to aid a peace officer'', as a bar to all claims against them except the claim of defamation. They asserted a qualified privilege as a bar to the claim of defamation. Apparently accepting these contentions, the court below granted the Y.M.C.A. and Ecton summary judgment on each claim against them.

At the conclusion of the trial of the case against the City, the court directed verdict for the plaintiff on the claim alleging a violation of Fourth Amendment rights. While attempting to argue the amount of damages for the violation by reference to the history of these constitutionally protected rights, plaintiff's counsel was interrupted by the court, and, finally, completely prohibited from continuing such argument.

The following portions of the court's instruction on the City's liability for punitive damages relevant to this appeal were given over the City's objection:

> The plaintiff is seeking to recover damages for assault, trespass, intentional infliction of emotional distress, and Fourth Amendment violation. The damages which may be recovered in the present case are of two different kinds: (1) actual or compensatory; and (2) exemplary or punitive.

> . . . .

> If you find that the plaintiff is entitled to an award of actual damages and you further find that in doing the act complained of the defendant's agents acted wilfully, wantonly, or with malice, you may, but you are not required to, award the plaintiff exemplary or punitive damages in such a sum as would, in your opinion, punish the defendant for its unlawful act and deter it and others from committing like acts in the future.

The jury returned a verdict for the plaintiff against the City for trespass and violation of Fourth Amendment rights in the respective amounts of $25.00 and $15.00. They also granted plaintiff $7,925.00 in punitive damages against the City.

## I. DID THE TRIAL COURT ERR IN HOLDING DEFENDANTS Y.M.C.A. AND ADRIAN ECTON IMMUNE FROM LIABILITY BY VIRTUE OF SECTION 710-1011 OF THE HAWAII PENAL CODE?

The statutory waiver of civil liability created by Hawaii Penal Code Section 710-1011(3) applies to a person who ". . . act[s] reasonably under the circumstances known to him at the time'' he complies with Hawaii Penal Code Section 710-1011(1)(a) or (b). Thus, the immunity from liability is conditionally granted.

Plaintiff contends that the section is not applicable to the facts of this case pointing out that the officers were neither ". . . (a) [e]ffectuating or securing an arrest; or (b) [p]reventing the commission by another of any offense.''

In the instant case there are several material facts at issue. In addition there are statutory questions of fact which require resolve. Otherwise the non-liability of Section 710-1011 cannot be determined.

The disputed facts and unresolved statutory questions of fact, *inter alia*, are as follows:

1. Whether Ecton personally trespassed and invaded plaintiff's privacy;

2. Whether Y.M.C.A. and Ecton wrongfully summoned the police officers;

3. Whether the police officers were acting throughout on their own initiative or were just following the direction of the said defendants;

4. Whether the said defendants wrongfully instigated the illegal entry and invasion of privacy and in the infliction of emotional distress;

5. Whether there existed a "reasonable command" by the police officers, to which command the said defendants responded (as provided in Section 710-1011(1) );

6. Whether the said defendants "acted reasonably under the circumstances known to [them] at the time" (as provided in Section 710-1011(3) );

7. Whether the police officers were effectuating or securing an arrest; or preventing the commission by the plaintiff of an offense (as provided in Section 710-1011(1)(a) and (b) ).

We are, therefore, of the opinion that the trial court erred in granting Y.M.C.A.'s and Ecton's motion for summary judgment on plaintiff's complaint and City's cross-claim. *Technicolor, Inc. v. Vincent T. Traeger*, 57 Haw. 113, 551 P.2d 163 (1976).

II. DID THE TRIAL COURT ERR IN HOLDING THE STATEMENT MADE BY ADRIAN ECTON TO CAROL TAKAFUJI WAS QUALIFIEDLY PRIVILEGED AS A MATTER OF LAW?

In *Aku v. Lewis*, 52 Haw. 366, 371, 477 P.2d 162, 166 (1970), we set forth the appropriate test for determining under what circumstances a qualified privilege is to be considered applicable:

A qualifiedly privileged occasion arises when the author of the defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty. [Citations omitted.]

The interest or duty of the recipients is essential to the privilege. If the person or persons to whom the communication is addressed have no recognized interest in the statement, there is no privilege. [Citations omitted.]

*See also Russell v. American Guild of Variety Artists*, 53 Haw. 456, 497 P.2d 40 (1972).

The above test places emphasis on the reasonable action of the author of the publication and the corresponding interest between the author and the recipient. *Russell, supra* at 461.

The question herein is whether Y.M.C.A. and Ecton have satisfied both of the above requirements.

Assuming, without deciding, the existence of a proper relationship between Ecton and Takafuji, we find the record sufficient to raise a question of fact on the reasonableness of Ecton's statement. At the time he told Takafuji the plaintiff had thrown firecrackers from the window of his room Ecton had knowledge of the events that are the bases for the complaint in this case. He apparently based his statement on what

Keeling said he saw and conclusions deduced therefrom. However, he also knew that the plaintiff denied such conduct and that the police failed to discover any fireworks in the plaintiff's room or any other evidence that fireworks had been thrown from the room. The record also indicates that one month prior to making the statement the Y.M.C.A. attempted to evict the plaintiff from his room.

Taking these facts in the light most favorable to the plaintiff (*Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Technicolor, Inc. v. Traeger, supra*), it cannot be said that Ecton's statement was reasonable under the circumstances as a matter of law. The trial court erred in so holding. Thus, the trial court erred in granting summary judgment for Y.M.C.A. and Ecton on plaintiff's charge of defamation.

III. DID THE TRIAL COURT ERR IN LIMITING PLAINTIFF'S ATTEMPT TO ARGUE THE HISTORICAL VALUE OF THE FOURTH AMENDMENT DURING HIS CLOSING ARGUMENT?

*Stanbury, California Trial and Appellate Practice,* volume 1, Section 593, in reference to scope of proper argument states:

> An attorney must necessarily be permitted great latitude in arguing a jury case. While he must confine himself to the evidence and issues, he may draw whatever inference he chooses and is not required to be logical. . . . "There is no fixed standard of reasoning. . . ."
>
> . . . [I]n discussing the evidence the attorney's "illustrations may be as various as the resources of his genius; his argumentation as full and profound as his learning can make it; and he may. if he will, give play to his wit, or wings to his imagination." He may comment upon historical facts, and upon matters of common knowledge which are not special to the case in trial. . . .

In *Ginoza v. Takai,* 40 Haw. 691. 703 (1955), we quoted the following with approval:

> [T]he manner of conducting the oral argument before the jury is so much within the discretion of the trial court that this court will hesitate to interfere, unless it should ap-

pear manifest injustice was done. [Citation omitted.] HRS § 635-52 (Supp. 1975) provides:

§635-52 *Scope of argument*. At the close of the evidence (unless the court directs a verdict, or orders entry of a judgment of acquittal), the respective parties, or their counsel, shall be entitled to sum up the facts to the jury. In their addresses to the jury they shall be allowed ample scope and latitude for argument upon, and illustration of any and all facts involved in the cause, and the evidence tending to either prove or disprove the same. They shall not be forbidden to argue the law of the case to the jury, but they shall not assume to instruct the jury upon the law, in such manner as to encroach upon the function of the court to so instruct the jury.

In all actions for damages for personal injuries or death the parties or their counsel shall be entitled to argue the extent of damages claimed or disputed in terms of suggested formulas for the computation of damages or by way of other illustration, and shall be entitled to state in argument the amount of damages the party believes appropriate.

We are aware of the fact that a plaintiff faces an almost insurmountable hurdle in proving the exact amount, in dollars and cents, damages suffered from the tortious act of a defendant in violating plaintiff's Fourth Amendment rights. The difficulty of proof is no different from the difficulty a plaintiff encounters in proving his damages for physical pain and suffering. There is no determinable legal yardstick to measure accurately the reasonable compensation for the above mentioned damage.

In reference to determining damages for pain and suffering we quote the following from *Stein, Damages and Recovery, Personal Injury and Death Actions*, Section 10 (1972):

§ 10. *Determining damages* — There is no precise calculation which will determine what is fair and reasonable compensation for pain and suffering.

The nature of pain and suffering is such that no legal yardstick can be fashioned to measure accu-

rately reasonable compensation for it. No one can measure another's pain and suffering; only the person suffering knows how much he is suffering, and even he could not accurately say what would be reasonable compensation for it. Earning power and dollars are interchangeable; suffering and dollars are not. Two persons apparently suffering the same pain from the same kind of injury might in fact be suffering respectively pains differing much in acuteness, depending on the nervous sensibility of the sufferer. Two persons suffering exactly the same pain would doubtless differ as to what reasonable compensation for that pain would be. This being true, it follows that jurors would probably differ widely as to what is reasonable compensation for another's pain and suffering, no matter how specific the court's instructions might be . . .

Because there is no arithmetical way in which to determine compensation for pain and suffering, "of necessity the measurement of such compensation must be left entirely to the jury. The pain for which the plaintiff recovers is only what is found by the jury. . . ." If the jury has considered the duration and severity of the pain and suffering and has, by its verdict, manifested a reasonable attitude in fixing damages, its resolution of the issue as to the amount which will fairly compensate for the pain and suffering generally governs. Ultimately, the courts must place great reliance upon the collective common sense of the panel.

However, certain limits upon the jury's discretion are enforced by the courts. The amount must be fair and reasonable, free from sentimental or fanciful [sic] standards, and based upon the facts disclosed. In making the estimate, the jury may consider the nature and extent of the injuries, the suffering occasioned by the injuries, and the duration and the pain. The jury may consider the age, health, habits, and condition of the injured party

before his injury as compared with his condition as a result of the injury.

*See also McCormick, Handbook on the Law of Damages,* § 88 (1935).

Because of this lack of a legal yardstick to measure accurately the reasonable compensation in question the courts are frequently confronted with the resolve of what constitutes proper and helpful arguments which a plaintiff may utilize in his argument to the jury in the proof of the amount of damages he believes appropriate.

In the instant case the trial court disallowed plaintiff's argument on the historical value — or the history as we see it — of the Fourth Amendment.

As to what constitutes proper argument to the jury for money damages for physical pain and suffering, we stated as follows in *Barretto v. Akau,* 51 Haw. 383, 393-94, 463 P.2d 917, 923-24 (1969):

There is obviously no market place for pain or suffering, so no objective standard can be used to aid the jury in determining damages. The usual test is rather simplistic and amorphous. . . .

. . . The dearth of standards by which to measure individual pain and suffering, the common sense of jurors, and the presence of alternative judicial safeguards that are less intrusive into the juror's province lead us to approve the use of formula arguments by counsel.

. . . The trial judge should make it clear that the formula is just that, *argument,* and no more. [Citation omitted] He should emphasize that it is part of counsel's function as an advocate to persuade the jury and that formulas are but illustrations which serve only to focus the inquiry on the issue which the jury must ultimately resolve, the extent of money damages. [Citations omitted]

Is an argument of the historical value or history of the Fourth Amendment, though not an argument premised on a formula, an illustration which serves to focus the inquiry of

the jury on the issue of the extent of the money damages suffered by the plaintiff? We are of the opinion that said argument does serve the purpose above mentioned. We believe that plaintiff's argument is not only imaginative but proper and helpful in projecting the facts involved in the cause and in serving to focus the inquiry of the jury as stated above. Is there a more exact and proper form of argument, for the cause herein, than the above? We are not aware of any at this moment. The argument herein, though not definitive in measuring accurately the reasonable compensation that plaintiff may be entitled to, does, however, provide value and substance to plaintiff's claim of the amount of damages he has suffered. However, the scope of the argument must be kept within reasonable bounds. Obviously, it is an argument and no more.

It is for the jury, thereafter, subject to the evidence adduced and instructions of the court, and as reasonable persons utilizing their common sense and good judgment, to determine what amount will reasonably compensate the plaintiff for the violation of his Fourth Amendment rights.

We are, therefore, of the opinion that plaintiff was entitled to present his argument of the historical value or history of the Fourth Amendment. The trial court's error in denying plaintiff the right to argue as above stated was prejudicial to the cause of plaintiff.

IV. WAS THE JURY PROPERLY INSTRUCTED ON THE CITY AND COUNTY OF HONOLULU'S LIABILITY FOR PUNITIVE DAMAGES?

The City is a legal entity created by the State legislature with a charter of its own.[2] Its liability for damages is governed by statute.[3] The question presented is whether the words

---

[2] Article VII, Constitution of the State of Hawaii; Appendix 1, HRS vol. 2.

[3] HRS §70-6 *Suits by and against*. Suits, actions, and proceedings may be brought in the name of the city and county for the recovery of any property, money, or thing belonging thereto, or dedicated to public use therein, or for the enforcement of any rights of, or contracts with, or ordinances or resolutions of, the city and county.

Suits, actions, and proceedings may likewise be brought against the city and county, for the recovery of any money, property, or thing belonging to any person, corporation, or the State, or for the enforcement of any rights of, or contracts with, or damages against, the city and county.

"[S]uits . . . for the recovery of . . . damages against, the city and county" include punitive damages.

In *Kamau v. County of Hawaii*, 41 Haw. 527 (1957), this court held the county should be liable for the negligence of its agents on the same principles which impose liability on a non-municipal principal for the tortious conduct of its agents. And in *Kealoha v. Halawa Plantation*, 24 Haw. 579 (1918), involving a non-municipal principal, this court held that no liability for punitive damages will attach to the principal unless the agent-malfeasor's conduct is shown to be authorized or approved or ratified by the principal.

However, the City argues that public policy requires the imposition of a judicial bar against recovery of punitive damages from the City absent clear and unambiguous statutory language to the contrary. The City asserts that punitive damages do not serve their deterrent or retributive functions when imposed against a municipal corporation.

We agree with the contention of the City that public policy dictates the conclusion that the City, as a municipal corporation, should not be held liable for punitive damages. The innocent taxpayers, the intended beneficiary from the public example which the punishment makes of the wrongdoer, should not be made to suffer. The deterrent or retributive effect of punitive damages must be placed squarely on the shoulders of the wrongdoer. *City of Gary v. Falcone*, 348 N.E.2d 41 (Court of Appeals of Indiana, 3rd Dist. 1976); *Ranells v. City of Cleveland*, 41 Ohio St. 2d 1, 321 N.E.2d 885 (1975); *Chappell v. City of Springfield*, 423 S.W.2d 810 (Mo. 1968); *Fisher v. City of Miami*, 172 So.2d 455 (Fla. 1965). A wrongdoer in this context includes a person superior in authority who expressly authorizes, ratifies or condones the tortious act of the employee.

The award of punitive or exemplary damages constitutes an exception to the purely compensatory aspect of the damages concept as a means to right a wrong. *McCormick* on *Damages*, § 77 (1935).

Basically, justification for a punitive award is to punish the offender and to deter others from committing

similar wrongs. [Citations omitted] Punishment and deterence [*sic*] being the principal supports for allowing this type of money award, the courts have historically declined to allow it in actions against municipal corporations for torts committed by their employees. While the wrongdoing employee is vulnerable to a punitive award, [citation omitted] the municipality is not. [*Fisher, supra* at 457.]

We, therefore, remand this case for a new trial or for further proceedings in accordance with this opinion.

*Edmund L. Lee, Jr.*, deputy corporation counsel, for defendant-appellant, cross-appellee.

*Steven H. Kroll (Barry Graczyk* with him on the brief) for plaintiff-appellee, cross-appellant.

*Robert F. Hirano (David J. Dezzani* with him on the brief, *Goodsill, Anderson & Quinn* of counsel) for defendants-appellees, cross-appellees.

### CONCURRING AND DISSENTING OPINION OF CIRCUIT JUDGE FONG WITH WHOM RICHARDSON, C.J., JOINS

I concur in part, and dissent in part.

One of the issues raised on appeal is whether or not the trial court erred in limiting plaintiff's attempt to argue the historical value of the Fourth Amendment during his closing argument. In my opinion, the trial issue goes deeper. Before deciding whether or not the trial court erred, scrutiny must be given to its latitude and discretion in allowing or disallowing oral arguments in general. Since it is undisputed that the trial court has wide latitude and discretion to allow oral arguments, it must, conversely follow that the trial court also has wide latitude and discretion to disallow oral argument. The majority opinion appears to give the trial court great latitude in *allowing* oral argument, but strictly would limit its authority in disallowing oral argument. Such result defeats its own purpose.

In the instant case, plaintiff's counsel may have been innovative and, perhaps, even imaginative, in referring to the

history of the constitutional rights at issue. Nonetheless, it was completely within the trial court's discretion to determine whether the relation was relevant and permissible. I do not find on the record such argument to have been relevant or of material value to the sole issue of damages involved.

In *Crews vs. Kansas City Public City Co.,* 341 Mo. 1090, 1105, 111 S.W. 2d 54, 62 (1937), the court said:

> The whole matter of prejudicial argument was before the trial court, and the judge was in a position to know all that was said, how it was said, and all the surrounding circumstances of the trial. We are inclined to accept his ruling . . .

The subject of history is a never-ending one. Interesting as it may have been, the trial court could not have permitted plaintiff's counsel to run the gamut of history, regardless of the difficulty of determining the value of constitutional violations.

In addition, the facts weigh heavy against the majority opinion. The jury returned a verdict against the City for trespass and violation of Fourth Amendment rights in the respective amounts of $25.00 and $15.00. The argument for the trespass damages obviously had no bearing on the argument for the constitutional damages, yet both damage awards were similar in amount. It stands more to reason that the jury would have awarded the same $15.00 for the constitutional damages even if the trial court had permitted plaintiff's counsel to argue at length. I cannot, with good reason, hold that the trial court committed a clear case of abuse of discretion or manifest injustice.

Therefore, I would reverse the lower court on issues I, II and IV, and affirm the lower court on issue III.