**Emmett G. DAMMON, Jr., et al.**

v.

**W.L. FOLSE, et al.**

**Civ. A. No. 93–1132.**

United States District Court,
E.D. Louisiana.

Feb. 2, 1994.

Don M. Richard, Denechaud & Denechaud, New Orleans, LA, for plaintiffs.

Patrick J. Berrigan, James Grady Wyly, III, Deutsch, Kerrigan & Stiles, Slidell, LA, for W.L. Folse.

Risley C. Triche, Risley C. Triche & Associates, Napoleonville, LA, Harry Platton Pastuszek, Jr., Muller & Pastuszek, Mandeville, LA, for Richard-Tanner.

Harry Platton Pastuszek, Jr., Muller & Pastuszek, Mandeville, LA, for Terry Bankston, Jules A. LaGarde, St. Tammany Parish School Bd.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the motion to dismiss of the defendants Terry Bankston and the St. Tammany Parish School Board. For the reasons that follow, the motion is GRANTED as to the School Board, and DENIED as to Bankston.

### Background

In this RICO case, plaintiffs allege that defendants conspired to rig the bidding process for the public contracts of the St. Tammany Parish School Board for their private enrichment. Plaintiffs also charge that defendants used their racketeering enterprise to prevent plaintiffs from securing any public contracts as retaliation against the plaintiffs because plaintiffs alerted the authorities to defendants' scheme. Plaintiffs assert that

---

1. The Court notes that in their amended complaint the plaintiffs added a fifth claim for state law violations. Defendants' motion to dismiss

defendants' activities formed an on-going RICO enterprise, with predicate acts of extortion, bribery, mail fraud and wire fraud.

In September of 1993 the School Board, Terry Bankston and Richard Tanner filed a motion to dismiss for failure to state a claim upon which relief can be granted. The Court converted their Rule 12(b)(6) motion to a motion for a more definite statement under Rule 12(e) because of the complexity of the RICO statute, and because it is the nature of these cases that some of the facts that could establish a claim for racketeering were often within the possession of the defendants. The Court gave plaintiffs an additional 30 days within which to conduct discovery and ordered the plaintiffs to file a RICO case statement that complies with the RICO Standing Order of this Court. Thereafter, plaintiffs were granted an additional thirty days to conduct discovery due to the illness of plaintiffs' counsel. On November 12, 1993 plaintiffs filed an amended complaint and an amended RICO case statement. The School Board and Terry Bankston have now filed a second motion to dismiss plaintiffs' RICO claims for failure to state a claim under Rule 12(b)(6).[1]

## I.

### A. RICO Liability of The School Board

■ The School Board argues that it cannot be held liable under RICO because a municipal entity lacks the ability to form the criminal intent necessary to commit the required predicate acts under RICO. The School Board is half right. Although there is no Fifth Circuit precedent on point, the School Board invokes some persuasive authority on the inability to have criminal intent from the Ninth Circuit. *Lancaster Community Hospital v. Antelope Valley Hospital District,* 940 F.2d 397, 404–405 (9th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *See also County of Oakland by Kuhn v. City of Detroit,* 784 F.Supp. 1275 (E.D.Mich.1992) (following *Lancaster* and *Nu–Life* ); *Nu–Life Constr. v. Board of Education,* 779 F.Supp.

does not address those claims; the Court therefore declines to discuss the adequacy of the pleading of those claims.

248 (E.D.N.Y.1991) (a school board, as a municipal entity, is incapable of forming the criminal intent necessary to support the alleged predicate offenses).

Dismissal of the RICO claims against the School Board is also justified under what the Third Circuit calls its alternative to the "incapacity to form mens rea" argument. In *Genty v. Resolution Trust Corporation*, 937 F.2d 899 (3rd Cir.1991) the Third Circuit reasoned that RICO's mandatory treble damages could not properly be applied against a municipal corporation because, despite the additional remedial nature of such damages, treble damages are primarily and essentially punitive in nature; and awarding punitive damages against the taxpayers of a municipal corporation whom RICO was designed to protect would be counterintuitive to the very purpose of the statute.[2]

This Court is of the belief that the two circuit theories for refusing to hold a municipal entity liable under RICO are not mutually exclusive—indeed, it can be said that they are two sides of the same concept. In an abstract but doctrinal sense, a corporation in and of itself cannot form mens rea. Similarly, a corporation, that is, the institutional construct itself, cannot be deterred; deterrence can only be achieved by targeting the behavior of the people who determine corporate conduct. Thus, if punitive damages would not operate to encourage innocent and essentially powerless taxpayers to prevent RICO's condemned activity by municipal officials, short of the election process, it would seem inappropriate to hold the municipal corporation liable.

The argument that a municipal corporation, as a corporation, cannot form mens rea summons a ready response: a private corporation is equally incapable of forming criminal mens rea, but that does not preclude the imposition of punitive damages again a private corporation's assets. But this Court draws attention to an important distinction: that distinction lies with whom is being deterred. As against a private corporation,

deterrence is said to operate, and does so, by encouraging the shareholders to police their board of directors. The differing approaches regarding private and municipal corporations is justified, as the Supreme Court wrote in *City of Newport v. Fact Concerts, Inc.* because:

> [T]he relation which the officers of a municipal corporation sustain toward the citizens thereof for whom they act, is not in all respects identical with that existing between stockholders of a private corporation and their agents; and there is not the same reason for holding municipal corporations, engaged in the performance of acts for the public benefit, liable for the willful or malicious acts of its officers, as there is in the case of private corporations.

*Newport* 453 U.S. 247, 261–62, 101 S.Ct. 2748, 2757, 69 L.Ed.2d 616 (*quoting Hunt v. City of Boonville*, 65 Mo. 620 (1877)).

The Third Circuit has added to the case dialogue and importantly articulated why private corporations are answerable for punitive damages but public corporations or entities are not:

> There are at least two major distinctions between municipal corporations and ordinary corporations that militate against imposing punitive damages on the former. First, there is the difference in accountability. Shareholders of an ordinary corporation can require quarterly reports, as is the usual case, or even more frequently, of the activities of their corporate officers or directors, and of the corporate operations, and thus have an opportunity to ascertain if there are any illegal or inappropriate activities by the corporation. Municipal officials, on the other hand, make no similar accounting to the public. Residents of a municipality, of course, can exercise their ballots in approval or disapproval but then usually only once every four years. Commenting on residents' capacity to regulate municipal officials' conduct, one court remarked, "While theoretically they have a voice in selecting the agents who shall

---

**2.** The Court is unpersuaded by plaintiffs' argument that mandatory treble damages under RICO are not punitive in nature. *See Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1141 (5th Cir. 1988) (RICO damages are punitive) (vacated on other grounds *Fryar v. Abell*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989)).

represent and control the municipality, we know that practically it often happens that the government is not of their choice, and its management not in accordance with their judgment." *Ranells v. City of Cleveland,* 41 Ohio St.2d 1, 70 O.O.2d 1, 321 N.E.2d 885, 888–9 (1975).

Second, a shareholder upon ascertainment or even suspicion of improper conduct can promptly disassociate from the corporation by selling the stock or bringing a derivative, injunctive, or some other appropriate remedial action. In contrast, even if information of fraudulent activity by municipal officers were available, residents of a municipality have little opportunity, if any, for disassociation.

*Genty v. Resolution Trust Corporation,* 937 F.2d 899, 911 (3rd. Cir.1991). This Court is impressed and persuaded by that sort of thinking.

Thus, the justification for the reluctance to impose RICO liability against municipal corporations is not merely due to the inability of municipal corporations to form the requisite criminal intent. That is only a glimpse of the rationale: the rule rests on the ineffectiveness of attempting to deter the behavior of a public corporation by way of punitive damages. In addition, it must also be stressed that the rule against imposing punitive damages on a municipality is conceptually sound because taxpayers, who are supposed to be protected by the RICO law, ought not be punished when RICO is violated by agents over whom they have little or no control.[3]

**B.   RICO Liability of Terry Bankston**

 Plaintiffs correctly assert that Bankston completely fails to address the allegations in the amended complaint that he used the mails to fraudulently give the appearance that he and the other defendants were conducting the School Board's activities in a legitimate manner. Furthermore, the allegation of continuity is that Bankston's fraud, by

use of the mails, helped to perpetrate the ongoing conspiracy to control the School Board's bidding process.

Due to the failure of Bankston to meaningfully engage the issue of the adequacy of the pleadings against him in particular, after full opportunity to do so, Bankston's motion must be denied.

Accordingly, the motion to dismiss all RICO claims against the St. Tammany Parish School Board is hereby GRANTED. The motion to dismiss the RICO claims by defendant Terry Bankston is DENIED.

---

**3.** The Court notes that its hybrid *Lancaster–Genty* rationale for rejecting RICO liability for the School Board extends to all the subparts of § 1962; *Genty* emphasizes that it is the availability of punitive damages that makes RICO inapplicable to municipal corporations. Punitive treble damages are available under each of the four subparts of § 1962. Furthermore, *respondeat superior* is not available as an end-run around this bar on RICO liability. *See Landry v. Air Line Pilots Ass'n Intern. AFL–CIO,* 901 F.2d 404, 425 (5th Cir.1990), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), (where legal enterprise cannot be held directly liable under § 1962(c), vicarious liability does not present an alternate route to impose liability).