ROSENN, Circuit Judge,
dissenting.
The immunity at common law of municipal corporations from liability for punitive damages was generally understood when the federal Civil Rights Act became law in 1871. Courts that had considered the issue prior to the enactment of section 1983 “were virtually unanimous in denying such damages against a municipal corporation.” City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259, 101 S.Ct. 2748, 2755-56, 69 L.Ed.2d 616 (1981). Judicial aversion against awarding punitive damages against a municipality persists in the overwhelming majority of jurisdictions even now. “The general rule today is that no punitive damages are awarded unless expressly authorized by statute.” Id.; 18 McQuillin, Municipal Corps. § 53.18.10, p. 247 (3rd ed. 1993).
The New Jersey Law Against Discrimination (LAD), N.J.S.A. §§ 10:5-1 et seq., does not expressly make a municipality liable for punitive' damages. Moreover, strong public policy and logic militate against the assessment of such exemplary damages. Because of these reasons, I believe the New Jersey Supreme Court would hold that municipalities in the State of New Jersey are immune from punitive damages in suits brought against them under the LAD. I therefore respectfully dissent.
I.
Gares, a Township employee, suffered discrimination and harassment because of her sex. This is a violation of her civil rights under federal and New Jersey law, and the jury appropriately compensated her for the actual damages she suffered. The jury also found that the offender, former police chief Gary Owens, behaved egregiously, and assessed punitive damages against him to punish or to teach him a lesson. But that, in my view, is the limit of the damages which plaintiff can recover for her injuries.
The District Court permitted the jury to assess punitive damages against the township of Willingboro as well, under New Jersey’s LAD. Because this raises a question pertaining to the correct statutory interpretation, it is a purely legal issue. Thus, this court should exercise plenary review, giving no deference to the district court’s holding. Oritani Sav. and Loan Ass’n v. Fidelity and Deposit Co. of Maryland, 989 F.2d 635 (3d Cir.1993).
The majority relies on a 3-3 decision addressing the question of the availability of punitive damages against a municipality in New Jersey’s Conscientious Employee Protection Act (CEPA), N.J.S.A. § 34:19-1 et seq., a substantially similar statute designed to protect “whistleblowers” from retaliatory action by their employers. In Abbamont v. Piscataway Township Board of Education, *735 269 N.J.Super. 11, 634 A.2d 538 (1993), the Superior Court of New Jersey, in a 2-1 decision, held that the issue of punitive damages against the Township for violations of CEPA, under a theory of vicarious liability, should be submitted to the jury. The majority reasoned that, because public employers were not specifically exempted from this portion of the statute, they were impliedly included.
The Supreme Court of New Jersey, however, split on this issue, 3 to 3. In Abbamont v. Piscataway Township Board of Education, 138 N.J. 405, 650 A.2d 958 (1994), the opinion written by Judge Handler adopted the reasoning of the panel majority of the Superior Court. Judge Pollock, however, joined by two other judges, held that “the Legislature did not intend that public entities should be subject to payment of punitive damages under the Conscientious Employee Protection Act.” Abbamont, 650 A.2d at 972-73 (Pollock, J., dissenting). Accordingly we have no clear mandate from the New Jersey Supreme Court on this issue. Although the majority in this case recognizes that we have no controlling law, at 726, it fully adopts the reasoning of the Handler opinion. I believe that this reasoning ignores important considerations of history, policy and United States Supreme Court precedent which today would decisively influence a majority of the New Jersey Supreme Court to the contrary.
LAD itself is silent upon this issue. It specifically includes the State and its political subdivisions in its definition of employer, N.J.S.A. § 10:5-5(e), and provides that “[a]ll remedies available in common-law tort actions shall be available to prevailing plaintiffs.” N.J.S.A. § 10:5-13. Based on a tortured reading of these two provisions, Gares asserts that the statute provides for the imposition of punitive damages against a municipality. The majority agrees, relying heavily on a phrase within the LAD that provides that the Act “shall be liberally construed.” N.J.S.A. § 10:5-3. This phrase is insufficient to constitute express authorization of punitive damages against municipalities in light of history and overwhelming case law; express authorization is what is needed to make them available to plaintiffs.
Municipalities were absolutely immune from suit at common law. The New Jersey legislature may have abrogated this immunity for purposes of the LAD, but there is no evidence in the plain language of the Act or in the legislative history to show that the legislature intended to abrogate immunity so far as to make municipalities hable for punitive damages over and above compensation to the injured employee. The majority relies on implication to reach this conclusion, an implication which I cannot believe the legislature intended.
At common law, it was well-settled that municipalities could not be subject to punitive damages. The United States Supreme Court and the majority of states that have considered this issue have kept this common-law rule. See, e.g., Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (recognizing the common law, and extending it to exempt municipalities from punitive damages under 42 U.S.C. § 1983); Genty v. Resolution Trust Corp., 937 F.2d 899 (3d Cir.1991)(hoIding that civil RICO claim, because of the punitive nature of its damages, could not be brought against a municipality); Fisher v. Miami, 160 So.2d 57 (Fla.App.1964)(ruling that punitive damages against a municipality do not serve the purpose of punitive damages against private bodies, and unfairly punish the public).
In fact, originally municipalities were not liable even for compensatory damages. Rather, municipalities, as agents solely of the public, were absolutely immune from suit. See, Russell v. Men of Devon, 100 Eng.Rep. 359 (1789). Since that time, absolute immunity for municipalities has been abrogated. Judges have held that losses due to tortious conduct on the part of municipal employees is better borne by the municipality than by the wholly innocent injured individual. This makes sense, as it would be unjust for a plaintiff to go completely uncompensated after suffering compensable injuries. Compensatory damages, then, have become part of the cost of the administration of government.
Such concerns, however, are not present in the realm of punitive damages. Punitive *736 damages are completely unrelated to compensating and “making whole” the injured plaintiff. Rather, they are monies awarded solely to punish the defendant, whose conduct has been deemed egregious, and to discourage him or her from continuing the pattern of behavior. Punitive damages, when assessed against individuals, as they are here against Owens, benefit the public by discouraging such behavior. See, Newport, 453 U.S. at 261, 101 S.Ct. at 2756-57.
This rationale, however, is inapplicable to a municipality. Punitive damages, when assessed against a municipality, are ultimately borne by the taxpayers, who have no control or input in the officer’s offensive behavior. Thus, the damages punish those persons who normally benefit by their assessment. Punishing innocent taxpayers serves no purpose but to give a windfall to the plaintiff. For this reason, the majority of states that have considered the issue have not assessed punitive damages against municipalities.
In general, courts viewed punitive damages as contrary to sound public policy because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised. The courts readily distinguished between liability to compensate for injuries inflicted by a municipality’s officers and agents, and vindictive damages appropriate as punishment for the bad-faith conduct of those same officers and agents. Compensation was an obligation properly shared by the municipality itself, whereas punishment properly applied only to the actual wrongdoers. The courts thus protected the public from unjust punishment and the municipalities from undue fiscal constraints.
Newport, 453 U.S. at 261, 101 S.Ct. at 2756-57.
When punitive damages are assessed against a private corporation, such costs are ultimately borne by the shareholders. However, shareholders in private corporations can demand accountings, and can divest themselves of their shares if they disapprove of the corporation’s conduct. In contrast, citizens of a municipal corporation have no way of demanding an accounting, and no way of disassociating except to move to another jurisdiction, an option that, depending on financial ability, the housing market, availability of suitable neighborhoods, and such, is dubious at best.
Citizens do have the power to vote for some of their municipal officers. However, this power can be exercised only periodically, and even then, citizens cannot make every personnel decision. In the present case, for example, Sadie Johnson, the Township manager, who was appointed to her position, appointed former chief Owens to his position. It is difficult to see what the citizens of Willingboro could have done in the situation before us. “While theoretically [municipal residents] have a voice in selecting the agents who shall represent and control the municipality, we know that practically it often happens that the government is not of their choice, and its management not in accordance with their judgment.” Genty, 937 F.2d at 910, citing Ranells v. City of Cleveland, 41 Ohio St.2d 1, 70 O.O.2d 1, 321 N.E.2d 885, 888-89 (1975).
Moreover, the reasoning that punitive damages serve as a deterrent becomes less sensible when applied to a municipality. As the Court stated, “it is far from clear that municipal officials ... would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality.” Newport, 453 U.S. at 268, 101 S.Ct. at 2760. Indeed, the individual officials are much more likely to be deterred by the threat of punitive damages assessed specifically against them.
I do not mean to imply by this dissent, that states may not ignore these policies and choose to subject their municipalities to punitive damages. However, the state legislature must make such a choice explicitly in order to be enforceable. In Newport v. Fact Concerts, Inc., supra, the Court refused to impose punitive damages on municipalities under 42 U.S.C. § 1983. A substantial portion of its reasoning was that the Court found “no evidence that Congress intended to disturb the settled common-law immunity.” Id., at 265, 101 S.Ct. at 2758-59. Thus, we too should find positive evidence in LAD that the New Jersey legislature intended to include *737 municipalities as defendants subject to punitive damages. The absence of an intent to exclude them is insufficient to predicate the prediction announced by the majority in this appeal.
I also doubt that the Legislature, when enacting LAD, “thought that it was overcoming the ban of the Tort Claims Act (TCA), N.J.S.A. § 59:9-2, on awarding punitive damages against public entities. That statute provides: ‘No punitive or exemplary damages shall be awarded against a public entity.’ Id.” Abbamont v. Piscataway Township, 138 N.J. 405, 650 A.2d 958, 972 (1994) (Pollock, J., concurring and dissenting).
II.
In sum, the better policy, and the weight of the law, is against permitting courts to assess punitive damages against a municipality, especially at this time when states, including New Jersey, the local municipalities, and even the national government have troublesome budgetary problems. Although municipalities are liable for the actual damages suffered by plaintiffs, and the personal offender for both actual and punitive damages, the overwhelming majority of jurisdictions have held that municipal liability is limited to compensatory damages. See 18 McQuillin on Municipal Corp. § 53.18.10 (3d ed. 1993).
New Jersey is certainly free to set contrary policy in its municipalities. However, such policy should be expressly stated by legislative enactment, not judicial decision. There is no express intent in the LAD to subject municipalities to punitive damages. Rather, the statute awards plaintiffs all the benefits they would receive at common law. At common law, a plaintiff could have recovered nothing from a municipality. The New Jersey legislature has expressly broadened the definition of employer to include municipalities, thus broadening a plaintiffs common law remedies. But without express authorization in the statute for also assessing punitive damages against municipalities, I am unwilling to agree with the majority that the New Jersey Supreme Court would agree that this was the legislature’s intent. Such a break with precedent would have to be precisely spelled out. Therefore, I must dissent [1].

. In light of the result I reach, I do not address the additional questions raised by the Township as to the sufficiency of the evidence to support an award of punitive damages and of its financial ability to pay as a predicate for an award of punitive damages.