Walter N. EDMONDS et al., Plaintiffs,

v.

Patrolman Vincent DILLIN et al., Defendants.

No. C79–702.

United States District Court, N. D. Ohio.

Jan. 2, 1980.

Jay B. White, White, Milano & Miller, Cleveland, Ohio, William T. Wuliger, Wuliger, Jacob & Fadel, Cleveland, Ohio, for plaintiffs.

John S. Polito, Donald F. Black, Asst. Directors of Law, Cleveland, Ohio, D. John

Travis, Janet R. Beck, Cleveland, Ohio, for defendants.

Joseph C. Domiano, Cleveland, Ohio, for City of Warrensville Hts.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Plaintiffs bring this action for alleged violations of their civil rights against the City of Warrensville Heights, its police department, and several of its police officers, and against the City of Cleveland, its police department, and several of its police officers. Plaintiffs seek to bring this action under 42 U.S.C. §§ 1983 and 1985 and directly under the Fourteenth Amendment. Numerous motions have been filed and will be ruled on by the court in the following order:[1]

1. a motion to dismiss the Cleveland Police Department as a party defendant;

2. a motion of plaintiffs for leave to file an amended complaint, considered together with a motion of the City of Cleveland for judgment on the pleadings;

3. a motion of the City of Cleveland to strike the prayer for punitive damages; and

4. a motion by defendants for a protective order staying discovery.

### I.

▮ The City of Cleveland moves to dismiss the Cleveland Police Department as a party on the ground that it is "not a legal entity but merely one arm of the municipal corporation's government structure" and is therefore not a "person" for the purposes of section 1983. Plaintiffs urge that *Monell v. Department of Social Services of the City* of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), authorizes suits under section 1983 not only against municipalities, but also against "other local government units," including municipal police departments. They further contend that the police department can be sued *eo nomine* in a direct cause of action brought under the Fourteenth Amendment.

The debate over whether the police department is a separate entity subject to suit appears to be academic. If, as the police department claims, it is a part of the city itself, the department's policies are the city's policies; since the city is liable to suit under *Monell*, naming the police department as a party in addition to the city is superfluous. Even if the department is made a party, any recovery against the department will ultimately come from the city. In short, the city is not only the real but the only party in interest. See *Mayes v. Elrod*, 470 F.Supp. 1188 (N.D.Ill.1979).

Therefore, the Cleveland Police Department is dismissed as a party to this action.

### II.

The City of Cleveland moves for judgment on the pleadings pursuant to Fed.R. Civ.P. 12(c). The city maintains that because the complaint does not allege that the city's acts were undertaken pursuant to an official custom or policy, the city, under *Monell*, is not liable to plaintiffs.

In partial response to the city's motion, plaintiffs moved for leave to file an amended complaint. Although defendants object to this motion on the ground that they were not served with a copy of the proposed amended complaint, the court in the interest of expediency will address the allegations of both the complaint and the proposed amended complaint in assessing their validity under *Monell*. Defendants' specific objection is discussed below.

---

1. Although the City of Warrensville Heights or its police department has not joined in the first three motions, nor filed similar motions of their own, the court's rulings with respect to these motions necessarily apply also to Warrensville Heights and its police department.

■ The original complaint and the general allegations of the proposed amended complaint seek to impose liability on the city on the basis of *respondeat superior. Monell* holds, however, that a municipality cannot be held liable on the basis of *respondeat superior* under section 1983.[2] The same reasoning would preclude such liability under section 1985. *Owens v. Haas*, 601 F.2d 1242 (2d Cir.), *cert. denied,* —— U.S. ——, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Therefore, any allegations that the city is liable on the basis of *respondeat superior* are clearly insufficient to state a claim against the city.

## A.

### Liability Under Section 1983

■ *Monell* makes clear that a municipality cannot be held liable under section 1983 unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or the "constitutional deprivations [were] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. at 690–91, 98 S.Ct. at 2036. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983." *Id.* at 694, 98 S.Ct. at 2038. The original complaint does not satisfy *Monell.* The charge that the city "engages in a willful and/or malicious policy of racial harrassment [*sic*]" is conclusory and, therefore, absent any supporting factual statement, is insufficient to state a *Monell*-type claim against the city.

■ Plaintiffs' proposed amended complaint, however, expands upon the sparse allegations of the original complaint. In their proposed first cause of action plaintiffs allege that the city and its police department "acted willfully, and/or maliciously and/or negligently and/or in reckless disregard for plaintiffs' right to be free from unlawful search and seizure as guaranteed by the 4th Amendment." This allegation fails to specify a policy or custom on the part of the city that caused the constitutional violations plaintiffs allege. It therefore fails to state a claim under section 1983. The proposed second cause of action, claiming a denial of plaintiffs' right to counsel and due process, suffers a similar deficiency, and for that reason also fails to state a claim.

The proposed third cause of action alleges:

25. Defendants City of Cleveland and Warrensville Heights and their respective Police Departments have a duty to establish and enforce adequate rules and regulations governing the training qualifications, cities [*sic*] and conduct of police officers and their respective cities, and to establish adequate training education and instruction of police officers subsequent to their initial employment.

26. Failure of defendant municipalities to establish and/or enforce the aforementioned rules, regulations, policies, programs and procedures resulted in the arbitrary and capricious enforcement of the law by defendant police officers . . by reason of which plaintiffs have been deprived of the right to be free from unlawful search and seizure, right to counsel and the right to due process of law, as guaranteed by the Fourth, Sixth, and 14th Amendments . . . .

2. The basis for municipal liability in a direct cause of action under the Fourteenth Amendment need not be addressed, inasmuch as the court holds there is no implied cause of action against a municipality under the Fourteenth Amendment. See section II.B., *infra.* Even if there were such an action, however, the Sixth Circuit has held that it does not encompass *respondeat superior* as a basis for liability. *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979).

Plaintiffs further allege that the city acted "arbitrarily, and/or capriciously, and/or maliciously, and/or unreasonably."

The liability of supervisory officials for inadequate training of subordinates has raised considerable debate, and the liability of a city for such inadequacy is, if anything, still more problematic. Recent cases considering claims of negligent hiring, training, or supervision of police officers have held that mere negligence on the part of a municipality is not actionable under section 1983. The source case is *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978). In *Leite* the court considered allegations that the City of Providence was liable for verbal and physical abuse visited upon him by five Providence policemen because the city "'was negligent in hiring, training, continuing to employ and/or failing to discipline and/or supervise its employees.'" *Id.*, at 588.

The court noted that "[a]side from plaintiffs' *respondeat superior* claims" (not permissible under *Monell*), plaintiff "only alleges that the city was negligent in its training and hiring of the police force." The court concluded that "[s]uch allegations of simple negligence do not state a claim under section 1983."

Abjuring simple negligence as the standard, the court searched for a higher "degree of culpability a municipality must exhibit in order to be liable under section 1983" for inadequate police training. Recognizing that "a municipality can only act through its high level, supervisory officials," but that "a municipality cannot be

held liable under section 1983 on the theory of *respondeat superior*," the court determined that "a municipality may be held liable if it acts 'directly' through those officials who set and supervise municipal policy." The court then reasoned:

> Because a municipality acts through its high level officials and occupies a supervisory position, this Court may determine the scope of municipal liability by relying upon those precedents which discuss the degree of culpability required under section 1983 by one in a supervisory position.

463 F.Supp. at 589.

With respect to the degree of culpability required when supervisory officials are sued under section 1983, the court drew this standard from the precedents considered:

> [T]he supervisory official must have participated in some way in the alleged constitutional deprivation or acted in such a way as to exhibit a "deliberate indifference" to the deprivation of the plaintiff's constitutional rights.

*Id.*, at 590. The court cited as support for the requirement of participation in the unconstitutional act *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).[3] The court took the "deliberate indifference" formulation from *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).[4] Combining *Estelle*'s "deliberate indifference" and *Rizzo*'s "authorization or approval" standards, the court eventually achieved this formulation:

> If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost

3. As to *Rizzo v. Goode*, Judge Pettine, the author of *Leite*, stated:

> The Supreme Court denied injunctive relief under section 1983 because the plaintiffs had failed to show an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct."

4. As to *Estelle v. Gamble*, Judge Pettine felt that it provided some guidance on the degree of

culpability required under section 1983. He noted:

> *Estelle* involved a 1983 suit alleging a violation of the Eighth Amendment. At least in the context of the Eighth Amendment, a negligent act or failure to act was not sufficient, in itself, to state a section 1983 cause of action; instead, the plaintiff must show that the state officials acted with "deliberate indifference" to the probable constitutional violation.

inevitable, the municipality exhibits a "deliberate indifference" to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations.

■ A relevant standard for determining municipal liability under *Monell* can be drawn from *Rizzo*: There must be an "affirmative link" between "the adoption of any plan or policy by [a municipality]—express or otherwise—showing [its] authorization or approval of such misconduct"[5] and police misconduct (alleged in this case to be intentional violation of Fourth Amendment rights).

However, "deliberate indifference" is not an apt standard for defining the degree of municipal culpability required under *Monell*. In *Estelle v. Gamble*, the Court applied the Eighth Amendment in a section 1983 action involving the "government's obligation to provide medical care for those whom it is punishing by incarceration." That the Court was particularly directing the standard of "deliberate indifference" to that situation is shown by the court's conclusion "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia, supra,* [428 U.S. 153] at 183, 96 S.Ct. at 2925 . . ., [96 S.Ct. 2909, 49 L.Ed.2d 859] proscribed by the Eighth Amendment."

Because this court believes that the "deliberate indifference" standard of *Estelle v. Gamble* should be confined to Eighth Amendment applications, this court declines to adopt it in fashioning a *Monell* standard applicable to a police training case. More-

over, this court does not find the words "grossly negligent" useful in fashioning a *Monell* standard. The definition of gross negligence is not distinguishable from the definition of "recklessness."[6] This court also believes that *Monell* requires more than a showing of gross negligence, even assuming that gross negligence can be successfully defined to distinguish it from "recklessness," which is acceptable and "simple negligence" which is not.

■ Adopting the first part of the *Leite* formulation, and building thereon, this court adopts this standard which it concludes is appropriate in a "police training" case under *Monell*:

If a municipality completely fails to train its police force, or trains its officers in a manner that is in reckless disregard of the need to inform and instruct police officers to perform their duties in conformity with the constitution, and if the municipality might reasonably foresee that unconstitutional actions of its police officers might be committed by reason of the municipality's failure or reckless disregard, then the municipality would have implicitly authorized or acquiesced in such future unconstitutional acts.

■ When measured against the standard adopted by this opinion, the allegations of the proposed amended complaint are deficient. It is not alleged that the city in training or supervising its police officers exhibited a wilful or reckless disregard of the need to instruct its police to perform their duties constitutionally and without discriminatory intent so as to implicitly acquiesce in or authorize the unconstitutional acts alleged in this case. To the extent

5. *Monell, supra*, 436 U.S. at 694, n.58, 98 S.Ct. at 2037, in discussing the doctrine of *respondeat superior*, suggests that by the *Rizzo* decision the Court

. . . would appear to have decided that the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability. See *id.*, at 370–371, 96 S.Ct. 598.

6. 38 C.J.S. 1084 thus defines "grossly careless or grossly negligent":

The phrase imports more than mere inadvertence, is used in the sense of reckless; has been construed to convey the idea that the act referred to was done under such circumstances as to strike one at first blush as reckless or wanton; and has been specifically defined as disclosing a reckless indifference to consequences without the exertion of any substantial effort to avoid them; failing to exercise even slight care. [Footnotes omitted.]

plaintiffs are alleging that cities have a constitutionally imposed duty to prevent all violations of constitutional rights by its employees, it is merely another way of claiming liability on the basis of *respondeat superior*, clearly foreclosed by *Monell*. The court further notes that the third claim does not in any way identify what training procedure was inadequate and in what way. The third proposed cause of action, therefore, is insufficient under *Monell*.

■ The fourth proposed cause of action alleges:

> Defendant municipalities customarily discriminate against racial minorities and poor people. Defendant cities knew that similar raids and/or conduct occurred as in the instant case have occurred in the past. Because defendants failed to speak out and take meaningful action against such raids and/or conduct defendant cities ratified such police conduct and discriminatory behavior.

It further alleges that as "a direct and proximate consequence" of these acts, plaintiffs were deprived of their Fourth Amendment rights and of due process of law.

Under this court's standard, a city can be liable for acquiescing in or implicitly authorizing constitutional violations by its employees. While plaintiffs' allegations are rather conclusory, in light of the liberal pleading requirements of Fed.R.Civ.P. 8, especially as some courts hold, in civil rights cases, they are sufficient to state a claim against the city under section 1983. The city, of course, may move for summary judgment if no factual basis for the alleged misconduct is adduced.

## B.

### *Liability Under the Fourteenth Amendment*

■ In *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979), the Sixth Circuit held that despite *Monell* a direct action under the Fourteenth Amendment can still be brought against a municipality. While ruling out recovery on the basis of *respondeat superior*, the court declined to define the exact contours of municipal liability in a direct action under the Fourteenth Amendment.

In reaching that decision, however, the court relied upon *Turpin v. Mailet*, 579 F.2d 152 (2d Cir. 1978), which reached a similar conclusion. *Turpin*, however, was vacated and remanded by the Supreme Court for reconsideration in light of *Monell*. 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), *sub nom. West Haven v. Turpin*. On remand, the Second Circuit held that "there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the City of West Haven under § 1983." 591 F.2d 426, 427 (2d Cir. 1979).

In light of the Supreme Court's remand in *Turpin* and the Second Circuit's subsequent reversal of its earlier position, on which the Sixth Circuit in *Jones* relied, this court concludes that the Sixth Circuit, if it today decided the question, would not reach the same result it reached in *Jones*. Therefore, plaintiffs do not have a direct cause of action under the Fourteenth Amendment.

## C.

### *Liability Under Section 1985*

The proposed fifth cause of action alleges:

> 35. In carrying out the acts specified [above] defendants City of Cleveland and Warrensville Heights were motivated by invidious discrimination against Blacks and other powerless and oppressed minorities.
>
> 36. In carrying out the acts specified [above] all defendants conspired to invidiously discriminate against all plaintiffs because they were Black and supposedly powerless to stand up for their Civil rights against the Gestapo-like raid of 15 police officers.

This conduct is alleged to have violated 42 U.S.C. § 1985.

■ As stated above, *respondeat superior* is not a basis for municipal liability

under section 1985. In order for a city to be liable under section 1985, it would have to be proved that the city as an entity through policy or custom engaged in a conspiracy. This court is of the view that a city cannot be held liable under section 1985 for conspiring with its own employees when they are acting pursuant to official policy or custom. A similar principle precludes a corporation from being charged with conspiracy to violate the anti-trust laws "when it exercises its rights through its officers and agents, which is the only medium through which it can possibly act." *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir. 1952).

However, if through its mayor or other executive leadership, or through the mayor and council, a municipal corporation should combine or agree with one or more police officers, acting individually and independently of the city, to specifically deprive an individual of his Fourth Amendment rights against unreasonable searches and seizures, and in furtherance of that combination or agreement one of the conspiring police officers acts with a specific intent to deprive said individual of such rights, a section 1985 conspiracy claim would be stated against the municipal corporation and its police officers. The proposed fifth cause of action lacks allegations of fact that would comply with this narrow but permissible section 1985 claim against a municipality and its police officers.

### III.

Plaintiffs seek punitive damages in the amount of one hundred million dollars. Defendant City of Cleveland urges that punitive damages cannot be assessed against a municipal corporation, citing *Ranells v. City of Cleveland*, 41 Ohio St.2d 1, 321 N.E.2d 885 (1975); therefore, it asks that the demand for punitive damages be stricken.

Punitive damages are generally held to be recoverable in appropriate circumstances against individual defendants in civil rights actions. With respect to municipal defendants, *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978), which held that a municipality is a "person" within the meaning of 42 U.S.C. § 1983, did not expressly address the issue of punitive damages. *Monell* specifically involved the liability of a municipality for "equitable relief in the nature of back pay" under section 1983. On the issue of remedies, the Court stated only the following: "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . ." 436 U.S. at 690, 98 S.Ct. at 2036 (footnote omitted).

Under 42 U.S.C. § 1988, state law can sometimes be applied in civil rights actions:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . . .

It has been held, for example, that since Congress did not provide for a statute of limitations in actions under section 1983 and other civil rights statutes, the most analogous state statute of limitations is to be applied.

The availability of punitive damages against a municipality, however, should be determined as a matter of uniform federal law, and should not vary from state to state, depending on each state's policy with respect to punitive damages. Therefore, *Ranells, supra*, cannot be applied as controlling although its reasoning may be con-

sidered. Instead, the court will look to the policies underlying the imposition of liability upon municipalities under section 1983 and determine whether those policies are served or disserved by allowing the recovery of punitive damages against a municipality.

The fundamental goal embodied in the civil rights statutes of compensating aggrieved individuals for violations of their constitutional rights is fulfilled by the availability of compensatory damages, given the limited scope of the action which the Court holds may be brought against a municipality under section 1983. A prevailing plaintiff is made whole by an award of compensatory damages; as *Ranells, supra,* 41 Ohio St.2d at 7, 321 N.E.2d at 889, holds, an award of punitive damages against a municipality goes beyond compensation. It acts as a windfall for the particular plaintiff.

The availability of punitive damages is usually justified on the ground that punitive damages punish the offender and deter others from acting similarly. In the case of a municipality, however, neither justification is compelling.

With respect to punishment, the imposition of even compensatory damages is in itself a form of punishment. As discussed in Part II, to obtain *Monell*-type relief against a municipality, wilful or reckless acts of commission or omission on the part of the municipality must be proved. Yet, proof of such acts usually warrants the trier of fact to award punitive damages. Thus, if punitive damages were allowed in this case, plaintiffs could obtain punitive damages against the municipal defendants without adducing any additional proof of unlawful behavior. Furthermore, the imposition of punitive damages operates more as a punishment of taxpayers than of the city

itself, if indeed the notion of punishing a city has any meaning to begin with.

With respect to deterrence, a municipality, unlike an individual, is not a monolithic entity; it does not act with a single mind or motive. Its policies are an amalgam of past acts by various actors. Therefore, the concept of achieving deterrence, as it is traditionally conceived, is less applicable in the case of a municipality than an individual. Moreover, the possibility of any liability, even if only for compensatory damages, serves the purpose of deterring constitutional violations.

Punitive damages are likely to impose new and sizable financial burdens adding to the specter of financial ruin already facing some cities. Finally, the possibility of juries (and parties seeking to enhance the settlement value of their suits) looking to cities as "deep pockets" cannot be overlooked.

In light of these countervailing considerations, this court concludes that while the Supreme Court has now construed the word "person" in section 1983 to include a municipality under a new reading of the legislative history of the Civil Rights Act of 1871,[7] yet a further and specific reading would be necessary to show that the 1870 Congress intended to strip municipalities of their traditional immunity to the extent of making them liable for punitive damages under the Civil Rights Act. This expanded reading of the legislative history is not warranted and will not be made by this court. The court therefore concludes that punitive damages cannot be obtained against a municipal defendant.[8] The prayer for punitive damages is therefore stricken.[9]

### IV.

In light of the discussion above, plaintiffs' motion to file an amended complaint

---

7. In *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it was read to exclude municipalities from the term "person".

8. Compare the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* which expressly provides that the United States shall not be liable for punitive damages. 28 U.S.C. § 2674.

9. Because the court holds that there is no implied cause of action against a municipality under the Fourteenth Amendment, *see* section II.B., *supra,* it is unnecessary to decide whether punitive damages are recoverable for such a cause of action.

will be granted only if a complaint conforming to the requirements set forth in this opinion is submitted. Plaintiffs are directed to serve defendants with a copy of the proposed amended complaint along with their renewed motion for leave to amend. Plaintiffs shall move to file an amended complaint within twenty days of the date of this order or the action will be dismissed.

## V.

Defendants filed a motion for a protective order staying discovery until criminal proceedings against some of plaintiffs were terminated. Subsequent events brought to the attention of the court indicate that there is no longer the possibility of criminal prosecution of plaintiffs arising out of the events that form the basis of this suit. Defendants' motion is therefore moot and will be denied.

IT IS SO ORDERED.