Craig R. NOREN, Donald L. Sjolseth, William S. Dahl, and Clarence Pippin, individually and on behalf of other persons similarly situated, Plaintiffs,

v.

James STRAW, Miron E. McClintock, a/k/a M.E. "Mike" McClintock, and David Gorton, Commissioners; Yellowstone County, Montana; Richard Shaffer, Sheriff; and James Heine, Head Jailer, Defendants.

No. CV–81–84–BLG.

United States District Court,
D. Montana,
Billings Division.

March 9, 1982.

Jeffrey T. Renz and James A. Patten, Patten & Renz, Billings, Mont., Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., for plaintiffs.

Charles R. Cashmore, Billings, Mont., John R. Barker, Portland, Or., for defendants.

Ward Swanser, Billings, Mont., for Commissioners.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

Both plaintiffs and defendants have filed motions for partial summary judgment in the instant action. For the reasons discussed below, we believe both motions should be granted on certain limited issues.

## I. FACTUAL BACKGROUND

Plaintiffs, former prisoners in the Yellowstone County Jail, filed this § 1983 action on April 9, 1981, against the Yellow-

stone County Commissioners, Yellowstone County, Sheriff Richard Shaffer, and Head Jailer James Heine. Plaintiffs seek class certification to include all present and future inmates of the Yellowstone County Jail. Plaintiffs also seek an injunction to prevent the county from continuing the jail policies complained of, declaratory judgments that plaintiffs' First, Sixth, Eighth, Ninth, and Fourteenth Amendment rights have been violated, and compensatory damages. Finally, plaintiffs pray for punitive damages against Commissioners Straw and McClintock.

On January 20, 1982, defendants Straw, McClintock, and Gorton filed a motion for partial summary judgment, arguing that suit against them was barred by the doctrine of legislative immunity. A few days later, on January 28, 1982, plaintiffs also filed a motion for partial summary judgment on the grounds that four constitutional violations exist as a matter of law. Defendants have also filed a motion to continue the trial on the grounds that defense counsel must correct bar exams on the week of the trial. Trial is now set for March 29, 1982, as the first case on that day.

## II. CLASS CERTIFICATION

Under Fed.R.Civ.P. 23(a), a class action is maintainable if "the representative parties will fairly and adequately protect the interests of the class." Defendants' only challenge to the adequacy of representation involves the allegations of ¶ 29 of the complaint that television monitors invade the privacy of female and juvenile prisoners. No female or juvenile prisoners are named plaintiffs to this action. At the hearing held on January 6, 1982, counsel for plaintiffs informed the Court that they were attempting to find a female or juvenile former prisoner willing to be joined as a plaintiff. Evidently, counsel have failed in that attempt.

■ We do not believe that the absence of a female or juvenile defendant should bar the right of privacy issue altogether. Presumably, the threat of privacy violations exists for all prisoners, male and female. On these grounds, we have decided to certify plaintiffs as a class for all the claims enumerated in plaintiffs' complaint. *See Hayes v. Secretary of Department of Public Safety*, 455 F.2d 798 (4th Cir.1972).

## III. LEGISLATIVE IMMUNITY

■ The issue of whether the county commissioners are shielded by the doctrine of legislative immunity is somewhat problematic. Clearly, a legislative immunity exists for local governing bodies acting in a legislative capacity. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). However, legislative immunity only exists if the activities complained of were purely legislative. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).[1] Thus, this issue requires us to characterize the county commissioners' duties with regard to the jail as either legislative or nonlegislative.

■ We believe that the activities of the county commissioners complained of in this case are at best quasi-legislative and that the commissioners are not immune from suit. The crucial allegations against the commissioners are legislative in character:

> [T]hey are ultimately responsible for the operation of the County Jail and must appropriate funds to administer said Jail and provide for the health, welfare and security of the persons incarcerated there.

Complaint, ¶ 4. To our mind, the crucial activity complained of is appropriation of funds. Appropriation of funds is the only means by which the commissioners may provide for the welfare of prisoners. This activity is peculiarly legislative.

---

1. Although the Ninth Circuit has been reluctant to convey absolute legislative immunity to local officials, it has indicated that, in certain instances, county supervisors acting in their legislative capacity are immune from suit. *Thomas v. Younglove*, 545 F.2d 1171, 1173 (9th Cir.1976).

However, a Montana statute creates an obligation to maintain the condition of the jail:

> Maintenance of county jail. The county commissioners have the care of the building, inspecting, and repairing of the jail and:
>
> (1) must, once every 3 months, inquire into its state, as respects the security thereof, and the treatment and condition of prisoners; and
>
> (2) must take all necessary precautions against escape, sickness, or infection.

MCA § 7–32–2204 (1981). This statute delegates to the commissioners something more than a purely legislative function. As the Ninth Circuit has made clear, "absolute legislative immunity is not always appropriate for county supervisors." *Thomas v. Younglove*, 545 F.2d 1171, 1173 (9th Cir.1976). If the activities of the commissioners are nonlegislative, absolute legislative immunity is not available. *Virginia Supreme Court v. Consumers Union*, 446 U.S. 719, 736, 100 S.Ct. 1967, 1976, 64 L.Ed.2d 641 (1980). The Montana statute on jail maintenance quoted above makes it apparent that the county commissioners have been delegated with administrative as well as legislative responsibilities. *See Jones v. Diamond*, 519 F.2d 1090, 1101 (5th Cir.1975). Thus, absolute legislative immunity is not available.

■■■ This is not to say that the county commissioners may not partake of a qualified official immunity, be it legislative or executive. However, a qualified immunity involves issues of intent and scope of discretion which must be determined by a jury.[2] These issues cannot be properly resolved upon a motion for summary judgment:

> A defense of official immunity ... raises issues of fact which cannot be resolved at the pleading stage.

*Thomas v. Younglove*, 545 F.2d at 1173. The commissioners must thus establish their immunity at trial under the holdings of *Scheur v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

There is a certain injustice in allowing suit against only the three present county commissioners. The conditions in the Yellowstone County Jail have been caused by, among other things, some 20 years of legislative refusals to allocate funds for jail improvements. The conditions did not appear overnight during the tenure of the present commissioners. Nonetheless, plaintiffs allege sufficient constitutional deprivations to raise valid issues of fact as to the present commissioners' collective liability for the wrongs alleged. Likewise, the commissioners' plea of legislative immunity raises issues of fact and cannot justify non-liability as a matter of law.

## IV. PUNITIVE DAMAGES

Plaintiffs seek $500,000 in punitive damages against only Commissioners Straw and McClintock, alleging that the actions of these two commissioners have been "wilfull, wanton and malicious." Complaint, p. 10, ¶ 5. Commissioners Straw and McClintock have responded to this argument by insisting that punitive damages are not recoverable against county officials where any award made against the county officials will be paid by the county. Since punitive damages are not recoverable against governmental entities, defendants contend that plaintiffs' prayer for punitive damages should be stricken.

■■■ In the usual case, punitive damages are recoverable in § 1983 actions. *Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066 (9th Cir.1978). However, this general rule must be altered where punitive damages are sought against a county. The United States Supreme Court has held that, in most cases, the principles of common law tort should gov-

---

2. A finding of qualified immunity requires an analysis of "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." *Scheuer v. Rhodes*, 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974).

ern § 1983 damages. *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1046, 55 L.Ed.2d 252 (1978). In Montana, punitive damages are not recoverable against a governmental entity such as a county. MCA § 2–9–104 (1981). Furthermore, any judgment entered against a county officer must be paid by the county and not by the official individually. MCA § 2–9–305(4) (1981); MCA § 25–13–205 (1981). Logically, then, any punitive award in this case, where the commissioners are sued for official acts, would be paid not by the commissioners themselves but by the county.

■ Unfortunately, we are aware of no cases deciding whether punitive damages are recoverable against an indemnified county official in a § 1983 action. In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court stated only that "[l]ocal governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." *Id.* at 690, 98 S.Ct. at 2035. Where the federal law fails to address an issue, a federal court should look to state law for guidance in deciding civil rights liability. 42 U.S.C. § 1988 (1976). At least one federal court has held that punitive damages are not recoverable against a municipality because an award of punitive damages "operates more as a punishment of taxpayers than of the city itself." *Edmonds v. Dillin,* 485 F.Supp. 722, 730 (N.D.Ohio 1980). We would thus conclude that a Montana county itself could not be held liable for punitive damages due to the prohibition of MCA § 2–9–104 (1981).

■ We believe it logically follows that, because a punitive award against a county official would be paid from the county treasury, punitive damages cannot be recovered against Commissioners Straw and McClintock. In our view, the intent behind MCA § 2–9–104 (1981), prohibiting punitive damages against a governmental entity, was to avoid punishing the taxpayer for torts committed by agents of the county. Certainly punitive damages will have minimal effect as a deterrent where the county

pays exemplary damages for wrongs committed by its employees. *See Edmonds v. Dillin,* 485 F.Supp. at 730. Furthermore, punishing the county taxpayer because of the unconstitutional actions of a county officer is patently unjust. We thus hold that the plaintiffs' claim for punitive damages is unfounded and must be dismissed.

## V. ACCESS TO THE COURTS

Plaintiffs argue that the Yellowstone County prisoners have been denied their constitutional right of access to the .courts. In *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), the United States Supreme Court held that prison authorities must provide prisoners with either "adequate law libraries or adequate assistance from persons trained in the law." The Ninth Circuit has made it clear that this same right of access to the courts must be recognized for local jail inmates. *Leeds v. Watson,* 630 F.2d 674 (9th Cir.1980). There is thus little doubt that Yellowstone County must comply with *Bounds* by either providing access to a law library or providing legal assistance.

■ The record before us makes it apparent that Yellowstone County denies jail inmates their right of access to the courts. First of all, inmates are denied all access to the law library because of lack of security. Deposition of Head Jailer Heine, pp. 58–59. Jail officials even refuse to bring prisoners specific law books they request. Second, Yellowstone County does not retain any person trained in the law to assist prisoners. Yellowstone County is therefore in violation of the dictates of the United States Supreme Court, and summary judgment for plaintiffs must be granted on this issue. The county will be permitted thirty (30) days in which to submit a proposal for providing prisoners their right of access to the courts.

## VI. JAIL DISCIPLINE

■ Plaintiffs contend that the absence of jail rules and the arbitrary discipline imposed by jail guards violate the

prisoners' rights to due process. These arguments are well taken. Prison regulations which create an expectation of benefits or privileges also create a liberty interest sufficient to invoke due process. *Lokey v. Richardson*, 600 F.2d 1265 (9th Cir. 1979). *See also Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1966). Likewise, we believe that county jails must adopt rules which define prohibited conduct and specify the discipline to be imposed. At the very least, prisoners must be given notice of the rules when they enter the jail, notice of which rules jail officials believe they have violated, and a right to a hearing where "protected interests" are threatened.

■ We do not believe that the rules adopted for the Yellowstone County Jail satisfy these constitutional requirements. The rules are not adequately posted. Affidavit of John Buckley, January 11, 1982. The only conduct prohibited is defined in the vaguest possible way as failure to act in "an orderly, decent manner, with respect for the rights of the other inmates." JRI–09, General Jail Rules. There are no written guidelines concerning punishment. There is no provision for a disciplinary hearing.

■ To satisfy the minimum standards of due process, Yellowstone County must draft rules which more specifically define prohibited conduct and establish maximum punishments for violations of individual rules. In addition, before solitary confinement may be imposed, the rules must give the prisoners a hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While we grant summary judgment for the plaintiffs on this issue, we also permit the county thirty (30) days in which to draft the proposed rules and submit them to this Court for approval.

## VII. RECREATION

Plaintiffs insist that they have a constitutional right to recreation which has been violated by jail officials. According to plaintiffs, "a growing number of courts have now held that the failure to provide inmates with adequate recreation constitutes an independent violation of the Due Process Clause." Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, p. 22. Implicit in this argument, of course, is the recognition that neither the United States Supreme Court nor the Ninth Circuit has explicitly recognized a prisoner's constitutional right to recreation.

■ We cannot see sufficient evidence that Yellowstone County's denial of recreation to prisoners in its jail amounts to a *per se* due process violation. Indeed, the county's recent installation of a recreation facility, equipped with a bicycle exercise, a punching bag, and a gymnasium set, has prompted plaintiffs to withdraw their motion for summary judgment as to injunctive relief. Plaintiffs thus seek a ruling that the county's past policy of denying jail prisoners all access to recreation is a *per se* due process violation making the county liable for damages. We regard the issue of recreation as a matter of proof for the jury and hence deny plaintiffs' motion for partial summary judgment on this issue.

## VIII. SEGREGATION

Plaintiffs argue that Yellowstone County violates a Montana statute requiring that pre-trial detainees and convicted criminals be confined separately. MCA § 7–32–2221 (1981). According to plaintiffs, this Court should address this issue even though a federal court lacks jurisdiction to decide such a question of state law in a § 1983 action. Plaintiffs rely on the doctrine of pendent jurisdiction to incorporate this segregation claim into their § 1983 claims.

■ Under 42 U.S.C. § 1983, a person acting under color of state law is liable to any other person who has been deprived of "any rights, privileges, or immunities secured by the Constitution." A violation by a county of a Montana statute is not cognizable under §. 1983. Even so, a federal court may choose to embrace such a claim under the doctrine of pendent jurisdiction where the claim "is derived from a

common nucleus of operative facts." *Durso v. Rowe*, 579 F.2d 1365 (7th Cir.1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82. In the case before us, the segregation claim involves a Montana statute which should be interpreted by a Montana court. *See Avery v. City of Chicago*, 501 F.Supp. 1 (D.Ill.1978). For that reason, we have decided to dismiss this claim from the action.

## IX. MOTION TO CONTINUE

■ Defendants' motion to continue the March 29, 1982, trial date in this action has been made because of a prior commitment of one of the defendants' attorneys to correct bar exams. Although we sympathize with counsel's predicament, we cannot in good conscience vacate the trial setting. With the Court present case load, another trial date would not be available for a year. As plaintiffs aptly suggest, the gravity of the allegations made in this case as to the conditions of the Yellowstone County jail demands that a trial be held as quickly as possible. Defendants' motion to continue the trial date is accordingly denied.

An appropriate order shall issue in accordance with this Memorandum Opinion.

## ORDER

Pursuant to the Memorandum Opinion this day filed in the above-captioned case,

IT IS ORDERED that this action be, and the same hereby is, hereby certified as a class action, pursuant to Fed.R.Civ.P. 23.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment on the issue of legislative immunity be, and the same hereby is, denied.

IT IS FURTHER ORDERED that defendants Straw and McClintock's motion for partial summary judgment on the issue of punitive damages be, and the same hereby is, granted.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment on the issues of access to the courts and jail discipline be, and the same hereby is, granted. The County is granted thirty (30) days in which to submit proposals and rules in accordance with the guidelines of this Court's Memorandum Opinion.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment on all other issues be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the issue of segregation of pre-trial detainees and convicted criminals be, and the same hereby is, dismissed from this lawsuit.

IT IS FURTHER ORDERED that defendants' motion to continue the March 29, 1982, trial date be, and the same hereby is, denied.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this order.